UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

Plaintiff,

v.

Case No. 18-cr-52-pp

JOHN A. GALLOWAY,

Defendant.

## ORDER DENYING DEFENDANT'S *PRO SE* LETTER MOTION TO REDUCE SENTENCE (DKT. NO. 125)

Defendant John Galloway pled guilty to one count of Hobbs Act robbery in violation of 18 U.S.C. §1951(a) and one count of brandishing a firearm during a crime of violence in violation of 18 U.S.C. §924(c)(1)(A)(ii). Dkt. No. 50. On November 14, 2018, the court sentenced him to serve 130 months in prison to run concurrently with any sentenced imposed in State v. John A. Galloway, Ozaukee County Case No. 2017CF317, followed by five years of supervised release. Dkt. No. 67. (He had received a five-year sentence from the state court.) On August 3, 2023—while still in state custody—the defendant filed a letter asking the court to reduce his sentence by twenty-four months under "18 USC 1B1.13/3582(c)(1)(c)." Dkt. No. 125 at 1. The court must deny the motion, although it regrets its extensive delay in ruling on it. That delay is entirely the fault of the court, and is not related to anything the defendant did or failed to do.

1

## I.    Background

On March 3, 2018, a grand jury issued a two-count indictment charging the defendant with one count of committing a Hobbs Act robbery of a Verizon Wireless Store and one count of brandishing of a firearm during and in relation to a crime of violence. Dkt. No. 1. On July 24, 2018, the defendant pled guilty to both counts. Dkt. No. 50. The presentence investigation report projected a guideline imprisonment range of 151 months to 188 months. Dkt. No. 57. On, November 14, 2018, the court sentenced the defendant to serve forty-six months on Count 1 and eighty-four months on Count 2, with the eighty-four-month sentence on the firearm charge to run consecutively to the sentence imposed on the robbery charge, for a total prison term of 130 months. Dkt. No. 67 at 2. The judgment stated that the 130-month prison term was to run concurrently with any sentence imposed in the defendant's pending state-court case, State v. Galloway, Case No. 2017CF317 (Ozaukee County Circuit Court). Id. (That order was legally incorrect; under 18 U.S.C. §924(c), the eighty-four-month sentence on the firearm charge was required by law to run consecutively to *any* sentence—this court's sentence for the Hobbs Act robbery *and* any state-court sentence imposed in Ozaukee County.) The court imposed a term of five years, or sixty months, of supervised release to follow the prison term. Id. at 3. As of August 2023, the defendant was projected to complete his state prison term on March 7, 2024. Dkt. No. 127. According to the Wisconsin Department of Corrections locator site, the defendant was released from state custody on March 5, 2024. appsdoc.wi.gov/lop/details/detail (for "Galloway,

2

John A., DOC #00678598). The federal Bureau of Prisons website reflects that the defendant currently is confined at FCI Talladega with a release date of April 26, 2027. https://www/bop.gov/inmateloc/ (for "John A. Galloway," register number 16627-089).

On July 25, 2023—while the defendant still was in Wisconsin DOC custody—the court received from the defendant a *pro se* motion asking the court to reduce his federal sentence by twenty-four months. Dkt. No. 125. The defendant says he has extraordinary and compelling circumstances warranting a sentence reduction based on incapacitation of the only family member capable of caring for his minor child or children, and he cites "18 USC 1B1.13/3582(c)(1)(c)." Id. at 1. The defendant explained that his daughter was eligible to graduate high school early—she had a 4.0 GPA in her junior year and had been offered scholarships by several outstanding schools—but she wanted to wait in the hope that the defendant might come home before she graduated. Id. at 1. The defendant also stated that his son's mother had been incarcerated for murdering her husband, and that his son's godmother had told him that she could not take care of his son due to her illness. Id. The defendant told the court that he had finished his HSED and that he'd taken parenting classes, employability classes and criminal thinking classes. Id. at 2.

The defendant told the court that "to be honest," he never knew the meaning of life. Id. at 1. He said that he'd done the best he could to live his life without a father figure; he said his two children were his "whole world." Id. The defendant emphasized that he'd pushed his daughter to get an education

3

(which was why he wanted to be home to see her graduate) and that his son was a good student, too. Id. The defendant emphasized that he wanted the two-year reduction in his sentence so that he could go home and be a better father. Id. at 2. He also explained that while in custody, he'd lost a lot—his sister, grandmother, aunt, three cousins and two close friends. Id. He said that he just wanted to raise his kids, work a job and live as well and as honestly as he could, so that he'd never return to custody. Id. He concluded by asking the court to see that he'd changed his life and to give him a chance to live his life again by giving him the sentence reduction. Id.

On July 27, 2023, the court asked the government and the probation office to respond to the defendant's request. Dkt. No. 126. On August 3, 2023, probation filed a memorandum advising the court that the defendant had not applied for compassionate release through the Bureau of Prisons. Dkt. No. 127. Probation also advised the court that the defendant's projected supervised release date from the BOP was April 26, 2027, and he was projected to be eligible for home confinement on October 26, 2026. Id.

On August 3, 2023, the government filed a response, opposing the defendant's request. Dkt. No. 128. The government first argued that the defendant had not exhausted his administrative remedies as required by 18 U.S.C. §3582(C)(1)(A) because he had not filed a request for compassionate release with the BOP. Id. at 4. Second, the government argued that the defendant's family circumstances did not constitute an extraordinary and compelling reason for early release. Id. The government argued that although

4

the defendant had said that he was seeking release to care for his minor son, the defendant had not provided enough information to show that he had a minor son needing care and that he was the only caregiver available. Id. at 4-5. The government opined that the overall "tone" of the defendant's request reflected that he just wanted to get out so that he could have the opportunity to do better; the government acknowledged that this was an admirable goal, but asserted that it is common—not "extraordinary"—for a defendant's family members to suffer along with him when a defendant is incarcerated because of his criminal conduct. Id. at 5. Finally, the government argued that even if the defendant met the standards for compassionate release, the sentencing factors under 18 U.S.C. §3553(a) "and the need to protect the public" weighed against granting his request. Id. at 5-6. And the government pointed out that even though the defendant had qualified as a career offender under U.S.S.G. §4B1.1, the court had imposed a sentence over ten years below the low end of the applicable guideline range; it asserted that giving the defendant another two-year reduction would undermine the sentencing goals of specific and general deterrence. Id. at 6.

## II. Defendant's Motion for Compassionate Release (Dkt. No. 125)

### A. Exhaustion Requirement

Under 18 U.S.C. §3582(c)(1)(A), the Director of the Bureau of Prisons may make a motion to the court asking for a compassionate release sentence reduction. The BOP has not done so here. Dkt. No. 127. In the alternative, if the defendant exhausts "all administrative rights to appeal a failure of the

5

Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility," the defendant may file his own motion requesting a sentence reduction. 18 U.S.C. §3582(C)(1)(A). Exhaustion is an affirmative defense for the government to raise. United States v. Newton, 996 F.3d 485, 488 (7th Cir. 2021). Both the government and probation assert that the petitioner has not exhausted these administrative remedies, and the government reminds the court that it is mandatory for a defendant to ask the BOP for compassionate release before asking the court (citing United States v. Sanford, 986 F.3d 779, 782 (7th Cir. 2021)). Dkt. No. 128 at 4.

When the defendant filed his request in July 2023, he was still in the custody of the Wisconsin Department of Corrections. It would have been premature for him to file a compassionate release motion with the *United States* Bureau of Prisons when he was not in BOP custody. But as the government points out, what that means is that his compassionate release request to this court was premature. He needed to wait until he was in BOP custody, then seek compassionate release from the warden of his federal institution. Only if the warden denied his request or did not act within thirty days would the defendant then be eligible to file a compassionate release motion with the court.

The court has explained that the defendant now is in BOP custody. But in the eighteen months or so that his compassionate release request has been pending with this court, he has not provided any proof that he asked the

6

warden of his federal facility for compassionate release. Until he first seeks compassionate release from the warden of his BOP institution, he is not eligible to seek compassionate release from the court.

### B. Extraordinary and Compelling Reasons

The court last heard from the parties in August of 2023. The court should have ruled on the defendant's request long before now; it regrets that it has not done so and apologizes to the parties for its delay. Because of that delay, even though the defendant has not exhausted his administrative remedies, the court will explain the two-step process governing motions for compassionate release and how the court believes it would apply to the facts of this case if the defendant *had* exhausted his remedies.

At step one, the defendant must present an "extraordinary and compelling reason warranting a sentence reduction." United States v. Thacker, 4 F.4th 569, 579 (7th Cir. 2021). If the court finds that the defendant has supplied such a reason, the court considers any applicable sentencing factors in 18 U.S.C. §3553(a) in determining whether to grant a sentence reduction and in deciding the amount of the reduction. Id. Because he is the one asking for a sentence reduction, the defendant bears the burden of establishing extraordinary and compelling reasons that warrant a sentence reduction. United States v. Newton, 996 F.3d 485, 488 (7th Cir. 2021).

Section 3582(c)(1) of Title 18 establishes a default rule that the district court "may not modify a term of imprisonment once it has been imposed," with only limited exceptions. At issue here is the so-called "compassionate release"

7

provision, which authorizes the court to grant a sentence reduction if the court finds that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. §3582(c)(1)(A)(i). Section1B1.13(2)(b)(3)(A) of the United States Sentencing Guidelines states that one extraordinary and compelling reason warranting a sentence reduction is "[t]he death or incapacitation of the caregiver of the defendant's minor child or the defendant's child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition." See also, *e.g.*, United States v. Turner, Case No. 18-CR-142, 2020 WL 5717096 (E.D. Wis. Sept. 24, 2020) (finding extraordinary and compelling reasons for a sentence reduction when the mother of a defendant's eight-year-old daughter was murdered, the next available family member could not provide care and the defendant showed that he had been involved in his daughter's life prior to his incarceration).

The defendant's two-page request stated that at the time he filed it, his daughter was a junior in high school with a 4.0 GPA, who could graduate early, but "she want[ed] to see if [the defendant] c[ould] make her graduation." Dkt. No. 125 at 1. It stated that his son also was a good student but that his son's mother "[was] locked up for murder of her husband" and that the son's "Godmother has cancer and saying she can't take care of him." Id. The defendant provided no information about the age of his son or whether anyone other than the godmother might be available to care for him. The defendant asked the court "for a 24 month sentence reduction so that [he] can go home [and] be a better father." Id. at 2.

8

The presentence investigation report filed October 15, 2018 reflected that at that time, the defendant had three daughters—a six-year-old and a four-year-old with mother Jennel Anderson and a twelve-year-old with mother Davita Coleman. Dkt. No. 57 at ¶¶78, 80. His two daughters with Ms. Anderson lived in Milwaukee; by 2023 they would be about eleven and nine. His daughter with Ms. Coleman lived in Chicago; by 2023, she would likely be seventeen or so—the right age for a junior in high school. The court assumes that the defendant was referring to his older daughter, whose mother is Ms. Coleman, when he referred to the daughter who'd done so well in school that she was eligible to graduate early, with scholarships. The court can understand why the defendant would want to be present at such a momentous graduation, and why his daughter would want to have him there. But neither the compassionate release statute nor the §1B1.13 list the desire to be present with loved ones a milestone moments as an "extraordinary and compelling" reason for a court to grant compassionate release.

Section 1B1.13 *does* list as an extraordinary and compelling reason the death of a minor child's caregiver if the defendant shows that he is the only person available to care for that minor child. But as the government points out, the defendant's letter falls far short the proof necessary to show such an extraordinary and compelling reason. The October 2018 presentence report makes no mention of the defendant having a son. He mentioned only three daughters. The presentence report reflects that as of at least October 2017—over nine and a half years ago—the defendant was in custody. Dkt. No. 57 at

9

§55. Although it is possible that he has had a son since the October 2018 presentence report was filed, it is unlikely. Even if the defendant has had a son since October 2018—or if he somehow forgot to mention his son during the presentence interview in 2018—he has not provided any information showing that his son is a minor, that his son's mother has been incapacitated or that there is no one other than him who could care for his son. He has not identified his son's mother. He has not explained whether his son was living with the mother before the mother allegedly was incarcerated for murder. He has not explained where the son was living at the time the defendant filed his letter or who was taking care of him at that time. He has not explained whether there were family members, or anyone else, other than him who could care for his son. Without this information, the court would not be able to determine whether the defendant qualified for a sentence reduction under 18 U.S.C. §3582(c)(1)(A)(i), even if he had exhausted his administrative remedies.

The defendant also explained that he had completed his HSED, and had taken parenting classes, employability and criminal thinking classes. He described all he'd lost since being incarcerated, explained that he had changed and learned since being in custody and said he wanted to get out so he could do things better.

The court commends the defendant for his work while in prison and his commitment to being present in the lives of his children. But "rehabilitation 'cannot serve as a stand-alone reason' for compassionate release." United States v. Peoples, 41 F.4th 837, 842 (7th Cir. 2022) (quoting United States v.

10

Hunter, 12 F.4th 555, 563 (6th Cir. 2021)). The court sympathizes with the defendant's family circumstances and the impact that his incarceration has had on his children, and it applauds the work he has put in to learn from his mistakes and make positive changes, but these things do not constitute extraordinary or compelling reasons to grant a sentence reduction under U.S.S.G. §1B1.13(2)(b)(3) or under the compassionate release statute.

    C.    <u>§3553(a) Sentencing Factors</u>

Finally, the §3553(a) sentencing factors weigh against granting the defendant's request. Those factors include (1) the nature and circumstances of the offense; (2) the defendant's history and characteristics; (3) the need for the sentence imposed to reflect the seriousness of the offence, to promote respect for the law, to provide just punishment, to afford adequate deterrence, to protect the public from future crimes by the defendant and to provide the defendant needed educational or vocational training, medical care or other correctional treatment; (3) the kinds of sentences available; (4) the kinds of sentences available and the sentencing range for the offense committed by the defendant; (5) any pertinent policy statements; (6) the need to avoid unwarranted sentencing disparities; and (7) the need to provide restitution. 18 U.S.C. §3553(a)(1)–(7).

As to the nature and circumstances of the offense, the defendant pled guilty to participating in a Hobbs Act robbery of a Verizon Wireless store in West Allis, Wisconsin on January 31, 2018. Dkt. No. 44 at 14. He agreed that around 7:30 p.m. that evening, he and his co-defendant had entered the store

11

wearing ski masks, black clothing and gloves. Id. He agreed that his co-defendant pointed a gun at an employee and demanded to know the location of the phones; when the employee pointed to the safe, the co-defendant responded by putting his gun to the employee's head and demanding that the employee open the safe. Id. Both the defendant and his co-defendant then grabbed phones out of the safe and ordered the employee to lay on the floor. Id. They loaded the phones into a duffel bag and a cardboard box and fled, taking eighty-four devices worth $66,621. Id. Officers located the defendant and his co-defendant hiding in a building, found the 9 mm Springfield semi-automatic pistol (consistent with the one brandished in the robbery) during the sweep, and executed a warrant where they discovered an AK-47-styled rifle with a sawed off rack and a loaded 9 mm Hi Point carbine rifle with a scope. Id. The defendant subsequently admitted that he knew that his co-defendant had brandished a gun during the robbery, and that he had advance knowledge that the co-defendant had that gun and planned to use it in the robbery. Id. at 16. The nature and circumstances of the offense were serious and violent.

As for the defendant's history and characteristics, the presentence report reflected that the defendant had a criminal history dating back to 2005, when he was sixteen. Dkt. No. 57 at ¶41. He had multiple adult convictions for drug offenses, including two felony offenses for manufacturing/delivering heroin and a felony conviction for armed robbery with use of a dangerous weapon. Id. at ¶¶46-47, 49. He also had a pending case in the state court for burglary of a cell phone store. Id. at ¶55. The defendant's ten criminal history points normally

12

would have yielded a criminal history category of V, but the number and type of prior felony convictions resulted in the defendant qualifying as a career offender under U.S.S.G. §4B1.1, which bumped his criminal history category to VI. Id. at¶52.

Although the defendant's adjusted offense level was 29 and his criminal history category was VI, the fact that he qualified as a career offender and the fact that he was convicted of violating 18 U.S.C. §924(c) meant that his guideline range increased from 151 months to 188 months (twelve-and-a-half to fifteen-and-a-half years) to 262 months to 327 months (twenty years ten months to twenty-seven years three months). Id. at ¶96. The fact that the defendant qualified as a career offender and that his guidelines were this high reflects his significant criminal history regarding drugs and violent crimes. The fact that just months before committing the instant offense, he'd committed a burglary of a cell phone store in Ozaukee County shows a pattern of this kind of criminal conduct. At age 29, the defendant reported only one prior job—with Staffing Partners—and he admitted that he'd mostly supported himself by selling drugs. Id. at ¶¶89, 90. At the time of his arrest, he was living with an ex-girlfriend at an address he could not remember. Id. at ¶81. These factors weigh against granting early release.

Given these factors, the court needed to fashion a sentence that would promote respect for the law, deter the defendant and others from committing these types of crimes and protect the public. The court did so by imposing a sentence of 130 months—ten years and ten months. Dkt. No. 67. That

sentence was *below* the low-end of the guideline range—whether the court used the higher career offender guideline range or the lower, non-career offender range. To reduce the defendant's sentence further, especially in the absence of any proven extraordinary circumstances, would be to ignore these factors, as well as the factor requiring the court to avoid unwarranted sentencing disparities.

The §3553(a) factors would weigh against granting the defendant's request for early release, even if he had exhausted his remedies and possibly even if he had identified extraordinary and compelling circumstances.

## III.    Conclusion

Because the defendant has not demonstrated that he has exhausted his administrative remedies, has not provided proof of any extraordinary or compelling reason and has failed to establish that his release comports with the §3553 factors, the court must deny his request for early release.

The court **DENIES** the defendant's *pro se* letter motion to reduce sentence. Dkt. No. 125.

Dated in Milwaukee, Wisconsin this 10th day of April, 2026.

BY THE COURT:

_____

HON. PAMELA PEPPER
Chief United States District Judge

14